HENRY WULFF

v.

J. FRANK ALDRICH.

*Filed at Ottawa May 9, 1888.*

1. FEES AND SALARIES—*compensation of county officers—by whom to be fixed.* Under the constitution of 1870, the county boards alone have the right and power to fix the compensation of county officers, except that of clerks of courts of record, of the treasurer, sheriff, coroner and recorder of the county of Cook.

2. SAME—*county board of Cook county—by whom the compensation of its members may be fixed—constitutionality of the statute on that subject.* Section 39 of chapter 53, of the Revised Statutes, fixing the *per diem* compensation of a member of the county board of Cook county at two dollars and a half, is in violation of section 10, of article 10, of the constitution, and therefore void. The county board of Cook county is alone invested with the power to fix the compensation of its own members.

3. SAME—*the compensation of what officers may be fixed by the legislature.* The legislature, in express terms, is invested with the power to fix the pay of all officers connected with the legislative, State, executive and judicial departments of the government, by specific provisions of the constitution.

4. CONSTITUTIONAL LAW—*presumption in support of legislative acts.* It is settled law, that the presumption is in favor of the constitutionality of every legislative act, and that in cases of doubt every possible presumption and inference will be made in favor of the constitutionality of the act in question, and that the courts will only interfere in cases of clearly unquestioned violation of the fundamental law.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. H. S. McCARTNEY, for the appellant.

Mr. E. R. BLISS, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 22d day of November, 1887, J. Frank Aldrich filed a petition in the circuit court of Cook county, against Henry Wulff, county clerk of said county, praying for a peremptory

writ of *mandamus,* to compel him, as county clerk, to draw a warrant on the county treasurer for the amount of an allowance made the petitioner by the board of county commissioners on account of his services as a member thereof, and of mileage in going to and returning from the meetings of said board, the compensation being so fixed at the rate of five dollars a day, and five cents a mile going and returning. The court overruled a demurrer to the petition, and the defendant declining to answer further, the court entered an order awarding a peremptory writ of *mandamus,* as prayed, to reverse which this appeal is prosecuted.

The appellant's refusal to draw his warrant on the treasurer is based entirely on the provisions of section 39, chapter 53, of the Revised Statutes, which fix the *per diem* compensation of a commissioner at two dollars and fifty cents, instead of five dollars, as allowed by the board, which, of course, affords a complete answer to the action, if that section is a valid law. Judge Tuley, who heard and decided the case in the circuit court, in holding the section of the statute cited unconstitutional, delivered the following opinion, which we fully approve, and reproduce it as an expression of our own view on the subject:

"The question presented by the pleadings in this case is as to the constitutionality of an act of the General Assembly of this State, in force July 1, 1872, section 39 thereof providing that the pay of a member of the board of commissioners of Cook county shall be two dollars and fifty cents per day for the time actually and necessarily engaged in discharging the duties of a member of such board, and five cents each way for necessary travel. The question is, whether or not this act is in conflict with section 10, of article 10, of the constitution of 1870,—or, in other words, whether the legislature or the county board of Cook county has the power to fix the pay of the commissioners of the board. The fact that the legislature,—a co-ordinate branch of the government,—has, by the passage of

the act in question, given a practical construction to the constitution, must have great weight with the court in determining the question here presented.

"The provisions of the constitution bearing upon this question are sections 5, 7, 8, 9 and 10 of said article 10, but more particularly sections 8, 9 and 10.

"Section 7 provides that the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected by the city of Chicago, and five by the towns outside of said city.

"Section 8 provides that in each county there shall be elected the following county officers: A county judge, a county clerk, a sheriff and treasurer, and in counties having more than sixty thousand inhabitants, a recorder of deeds. As this section stood at the time of the passage of the act of 1872, it included among such county officers the county surveyor.

"Section 9 provides that clerks of all the courts of record, the treasurer, sheriff, coroner and recorder of deeds of Cook county, shall receive as their only compensation for their services, salaries to be fixed by law, * * * which shall, in no case, be as much as the lawful compensation of the judge of the circuit court of said county, and shall be paid, respectively, out of the fees of the office, when collected, * * * the number of deputies and assistants to be determined by a rule of the circuit court.

"Section 10 provides, 'that the county board, except as provided in section 9, shall fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel, and other expenses, and in all cases where fees are provided for, such compensation shall be paid out of, and shall in no instance exceed, the fees actually collected. They shall not allow either of them more per annum than $1500 in counties not exceeding twenty thousand inhabitants, etc., * * * and $4000 in counties containing more than one hundred thousand inhabitants and not exceeding one hundred

38—124 ILL.

and fifty thousand inhabitants, and not more than $1000 additional compensation for each additional one hundred thousand inhabitants : *Provided*, that the compensation of no officer shall be increased or diminished during his term of office.'

"It is settled law that the presumption is in favor of the constitutionality of every legislative act,—that in cases of doubt, every possible presumption and inference will be made in favor of the constitutionality of the act in question, and that the courts will only interfere in cases of clearly unquestioned violation of the fundamental law. Our Supreme Court say, in *Lane* v. *Foreman*, 2 Scam. 238 : 'The courts will not interfere unless it is clear that the legislature has transcended its authority,' and that the question for the court is, 'whether the will of the representative, as expressed in the law, is or is not in conflict with the will of the people, as expressed in the constitution.'

"The particular words relied upon as giving the power of fixing the compensation of the commissioners of the county board, are found in section 10 : 'The county board, except as provided in section 9 of this article, shall fix the compensation of all county officers.' It must be admitted that the commissioners of the county board of Cook county are not only officers, but are county officers, and the term, 'all county officers,' is certainly broad enough to include them. But in the construction of the constitution, as well as of laws, the constitution is not to be interpreted strictly according to the words used in a particular clause or part of a clause. The whole clause, and in fact the entire constitution, must be referred to, with a view to ascertain the sense in which the words were employed. Let us first consider section 10 in all its parts.

"Section 10 appears clearly to embrace county officers to whose offices fees are attached, and those having no fees. The limitation upon the amount of the allowance,—that 'they shall not allow either of them more per annum' than the specified amounts, varying with the number of inhabitants,—

is clearly a limitation upon the salaries of officers with and officers without fees. The officers clearly may be officers who may or who may not need an allowance for clerk hire, stationery, fuel, or other expenses. It would appear, then, to be clear, from the consideration of section 10 alone, that the county officers referred to there are all the officers of the county except those specified in section 9.

"Section 9 in effect provides that the legislature shall fix the compensation of all clerks of courts of record, of the treasurer, sheriff, coroner and recorder of the county of Cook. But these are not all the county officers of Cook county. Not included are the county surveyor, the superintendent of schools, the county judge, the probate judge, and the commissioners of the county board of Cook county. If the county officers enumerated in section 8 were the only officers whose election is provided for, there might be some reason to contend that the county officers referred to in section 10 were those enumerated in section 8. But section 6 provides for the election of certain county officers, to-wit: three commissioners in counties not under township organization, to be known as the board of county commissioners; and section 7 provides for the election of fifteen commissioners, to compose the board of county commissioners of Cook county. The term, 'all county officers,' must be held to embrace all the county officers of each county in the State, including the county officers of Cook county that are not specified in section 9.

"There would be no question, for instance, that the county board of Cook county had power to fix the compensation of the surveyor of Cook county, he being one of the officers enumerated in section 8, but omitted from the enumeration of Cook county officers in section 9, whose compensation is to be fixed by the legislature. This alone would demonstrate that section 10 was intended to refer to Cook county, as well as to all other counties. The question occurs, then, is there any other provision in regard to the appointment of county officers

contained in this article upon counties, or elsewhere in the constitution, which will throw any reasonable doubt upon the intention of the legislature to confer the power on the county board to appoint all county officers, because if there exists such reasonable doubt, the legislative act must stand. Except in section 10, there is not to be found in article 10, on counties, any words which, by any possible construction, can be said to relate to the fees, compensation or salaries of the members of the board of county commissioners of Cook county, or of the county board of any other county in the State. A large number of counties in this State are governed, under the present constitution, by a board of three county commissioners, provided for in section 6 of article 10.

"There can be no doubt but that the legislature would have the power to fix the compensation of any public officer, without express words in the constitution conferring such power. Without constitutional limitation, the power of the General Assembly to make laws is absolute. Was it the intention of the convention that this general power should be exercised by the legislature, as to the salaries or compensation of the members of the different county boards? A reference to the different provisions of the constitution, concerning the mode of fixing the compensation of the various public officers of the State and of counties, will, in my opinion, throw some light upon the question here submitted.

"In the legislative department the provision is, that the members of the General Assembly shall receive five dollars per day for the first session, and thereafter such 'compensation as shall be prescribed by law.' As to the Governor and the executive State officers, it is provided that they shall receive for their service, 'a salary to be established by law.' As to the members of the judicial department of the government, the judges of the Supreme Court were provided with a salary of $4000, 'until otherwise provided by law.' All the circuit judges 'a salary of $3000 per annum, until otherwise pro-

vided by law.' The judges of the county court, and the judge of the probate court, when established, have no salary fixed in the constitution, but are covered by a general provision to be noted. The State's attorney of the county of Cook, it is provided, shall receive the same salary as the State's attorney in other counties, together with such further compensation as the county of Cook may give him; and all clerks and other officers, concerning whom no express provision is made, are included in the provision which reads as follows: 'All officers, where not otherwise provided for in this article,' (6) 'shall perform such duties and receive such compensation as is or may be provided for by law.' As to the county superintendent of schools, it is provided that his powers, duties, compensation, etc., 'shall be prescribed by law.'

"The foregoing citations, it will be noticed, provide the manner of fixing the compensation of all public officers except county officers. We thus see that the legislature, in express terms, is invested with the power to fix the pay of all officers connected with the legislative, State, executive and the judicial departments of the government, by specific provisions in the constitution, heretofore referred to. When we come to the compensation of county officers, we find no express provision for the legislature fixing the pay of any county officer, except those especially named in section 9, article 10, to-wit: 'The clerks of all the courts of record, the treasurer, sheriff, coroner and recorder of deeds of Cook county.' It therefore appears that as to the fixing of the compensation of county officers, (except those specified in section 9,) there is a radical departure made in the constitution, from the policy adopted as to fixing the compensation of all the other public officers of the State. Also a radical departure from the constitution of 1848, and other prior constitutions, in this respect. The question recurs, whether there was any reason for such radical change of policy.

"The constitution of 1870 was a radical innovation upon the prior constitutions of this State. It may be said to be a constitution with many and peculiar limitations. The severest criticism I remember to have heard upon it was, that it is based upon the theory that all men are dishonest,—all office holders, particularly. While previous constitutions gave us the mere skeleton or frame-work of government, leaving the legistature to supply the substance, this constitution appears, by its many limitations, to have gone to a greater extreme in legislating for the future conduct of the government than any prior constitution of this State, or that of any State of the Union. Its excellence and superiority over former constitutions is unquestioned. Having taken such peculiar pains to provide in what manner the compensation of all public officers should be determined, by what authority it should be fixed, and having designated the legislature of the State as the authority for fixing the compensation for all such officers, (except county officers,) the question is why the legislature was not *expressly* given the power,—if that was the intent of the framers of the constitution,—to fix the compensation of the county officers. The answer would be, necessarily, that the framers of the constitution did not intend to confer the power upon the legislature, if words can be found which vest the power elsewhere.

"References to the proceedings of a constitutional convention are sometimes resorted to by the courts in order to find reasons for a particular action of the convention. They are not resorted to for the purpose of construing away any express language of the constitution, or even for the purpose of construing what may be doubtful. 'When the inquiry is directed,' says Judge COOLEY, 'to ascertaining the mischief designed to be remedied or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory.' (Cooley's Const. Lim.

63, and cases cited.) In referring to the proceedings of the constitutional convention of 1870, it appears there was much debate on this particular section 10 of article 10. One great evil sought to be remedied was, that certain officers,—county officers and clerks of courts of record,—had previously been receiving princely salaries from their offices, in the shape of fees, running from $20,000 to a town collector, for three months' work in a year, to $60,000 per annum to a circuit clerk in the county of Cook. In that debate, it appears it was stated that one object of this provision was 'to disenthrall the legislature' from the influences which experience had demonstrated had theretofore been brought to bear, by such officers, to increase their fees and salaries. The fees and salaries of county officers varied greatly in the counties throughout the State.

"Such acts were passed, as, for instance, 'to increase the fees of certain officers in forty-eight counties,' 'regulating the fees of certain officers in counties therein named,' 'to regulate the compensation of sheriffs and collectors in certain counties,' and often an act to regulate them in a single county. Acts of this kind were passed in favor of certain officers, clerks, sheriffs, coroners, supervisors, by combinations among such officials, and by influences brought to bear upon the legislature which it appeared impossible for it to resist, so that two-thirds of the counties of the State were under the operation of special laws in regard to fees and salaries of the officers. It was stated that in the last session of the legislature preceding the constitutional convention, no less than eighty-five bills were passed, specially regulating the fees and compensation of public officers. It appears, also, that in the debate the attention of the convention was called to the fact that the language of section 10, by which the county board was given power to fix the compensation of *all county officers,* was broad enough to include other county officers than clerks, sheriffs, treasurers, coroners and surveyors, by a substitute that was offered by Mr. Washburn, that 'the board of county commissioners of

each county shall fix the maximum compensation of each county officer, except sheriff, county treasurer, and county commissioners. Such compensation shall be fixed by the General Assembly, which shall be paid in fees, not to exceed $2000 in any county,' and grading it according to the number of inhabitants. That substitute was voted down, but it demonstrates to my mind that the attention of the convention was called to the fact that the term, 'all county officers,' as embraced in section 10, was broad enough to include county commissioners.

"This section 10, at the time the debate referred to was going on, was intended to apply to all counties in the State, and the limitation of $1000 for every additional one hundred thousand inhabitants was added upon the request of the member from this county,—Mr. Joseph Medill. Subsequently, it was thought best to exempt Cook county, in part, at least, from its operation, and section 9 was proposed, which authorizes the legislature to fix the compensation of a portion of the officers of Cook county,—*i. e.*, the clerks of courts of record, the treasurer, sheriff, coroner, recorder of deeds and surveyor. This made it necessary to limit the power of county boards, given by section 10, to fix the compensation of all county officers, by inserting the words, 'except as provided in section 9' thereof, leaving section 10 to apply to Cook county only so far as it concerned officers not embraced in section 9.

"I am of the opinion that it was the intent of the framers of the constitution to make a radical departure from previous methods as to fixing the compensation of county officers; that it was the intent not to confer the power on the legislature, which had shown itself susceptible to the influences of county officers, and unable to resist them, but to devolve it upon the county boards of the respective counties. Larger powers of legislation were conferred upon counties than had previously been conferred; and it was the intent, it appears to my mind, to assimilate county government somewhat to municipal gov-

ernment. In fact, in this constitution, counties are, for the first time, recognized expressly as municipal corporations. The intention was to bring close home to the people the power of regulating the compensation of county officers, thereby fixing the responsibility upon the people themselves, to secure good officers,—or, in the language of one of the members of the convention debating this very provision, 'to give the people to understand that in electing their officers they must discriminate in favor of honest men and against scoundrels.'

"Upon a review of the proceedings of the constitutional convention, the mischief designed to be remedied clearly appears, as does also the purpose of the provision referred to, contained in section 10, article 10. The question was much debated· as to whether the power to fix the compensation of the county officers was more liable to abuse if left with the legislature than it would be if conferred on the county boards. It was conceded that it was liable to abuse with either body; but of the two evils, it appears that the convention found that to give the power to the county board was the least, as the county board was nearer the people than the legislature, and the responsibility would be more directly cast upon the voters of each county to see that they selected honest men for their county boards. The conferring of this power upon the county boards to fix the compensation of all county officers, including their own, may not have been wise, but that is not for the court to judge. The other method, of leaving it to the General Assembly, had been tried, and found a failure. The State legislature fixes its own salary, and the convention concluded to give like power to the county legislature or board.

"The express, plain, unambiguous language of section 10, which confers the power upon county boards to fix the compensation of all county officers, leaving no room for doubt as to the meaning of the framers of the constitution, and as to the understanding of the people who adopted it, and not finding elsewhere in the constitution any provision which· raises

any reasonable doubt as to the intent to confer such power upon the county boards, I feel compelled, with great reluctance, to hold that the act of the legislature assuming the power to fix the compensation of the county officers,—the commissioners of Cook county,—is in violation of section 10, article 10, of the State constitution, and therefore a void act."

Judge Tuley's treatment of the constitutional question involved is so complete, exhaustive and conclusive, that nothing remains to be said,—at least profitably,—on the subject.

The judgment will be affirmed.

*Judgment affirmed.*