MACLAY HOYNE, State's Attorney, Appellee, *vs.* FRANK P. DANISCH, Clerk of Municipal Court, Appellant.

*Opinion filed October 6, 1914.*

1. CONSTITUTIONAL LAW—*legislature has power to fix salary of State's attorneys.* Sections 25 and 32 of article 6 of the constitution clearly imply that the legislature shall have power, by general law, to fix the salary of State's attorneys notwithstanding the provision of section 10 of article 10 of the constitution that the county board shall fix the compensation of county officers.

2. SAME—*State's Attorney Salary act not in violation of section 12 of article 10 of constitution.* The State's Attorney Salary act of 1912, as amended in 1913, (Laws of 1912, p. 88; Laws of 1913, p. 360;) is not invalid as being contrary to the provision of section 12 of article 10 of the constitution that the legislature shall regulate the fees of officers so as to reduce the same to a reasonable compensation for services actually rendered.

3. STATE'S ATTORNEYS—*chief purpose of State's Attorney Salary act.* The chief purpose of the State's Attorney Salary act, as amended in 1913, is to provide a method for paying the State's attorneys regular salaries at quarterly intervals, using therefor, so far as required, all the proceeds of fines, penalties and forfeitures collected by the various officials, the net proceeds of which had theretofore been paid over to the county superintendent of schools for general school purposes, and that the balance, if any, not so used should be paid over to the county superintendent of schools for general school purposes.

. 4. SAME—*the State's Attorney Salary act does not affect fines inuring to others than the county superintendent of schools.* The State's Attorney Salary act of 1912, as amended in 1913, affects only such fines, penalties and forfeitures as had theretofore been paid over to the county superintendent of schools by the various officers collecting them, and does not apply to fines, penalties and forfeitures which by the various statutes are to be paid over, when collected, to officers or bodies other than such county superintendent of schools.

5. SAME—*clerks of courts and other officials may still receive fines.* Clerks of courts, justices of the peace and police magistrates may still receive fines, penalties and forfeitures in cases where, prior to the State's Attorney Salary act of 1912, they collected them for the county superintendent of schools, but since the passage of said act they must pay such fines, penalties and forfeitures to the State's attorney when collected.

6. STATUTES—*general repealing clause adds nothing to effect of act.* A general repealing clause adds nothing to the effect of the act, as all prior laws and parts of laws are impliedly repealed by irreconcilable conflicting provisions of the new law.

7. SAME—*repeals by implication are not favored.* Repeals by implication are not favored, and both statutes will remain in force unless they are so repugnant that they cannot operate together.

8. SAME—*courts will have regard for existing circumstances in construing law.* In construing a statute the courts will have regard for existing circumstances, contemporaneous conditions, the objects sought to be attained by the statute and the necessity for its adoption.

9. SAME—*a construction leading to great inconvenience should be avoided.* A construction which will lead to great inconvenience or absurd consequences should be avoided unless the meaning of the legislature is so plain that such avoidance is impossible.

10. SAME—*rule where statutes are enacted at the same session.* Statutes enacted at the same session of the legislature should receive a construction, if possible, which will give effect to each, as the presumption is that they were not intended to destroy each other unless the acts in express terms so state.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

SABATH, STAFFORD & SABATH, (CHARLES B. STAFFORD, of counsel,) for appellant.

MACLAY HOYNE, State's Attorney, (HENRY A. BERGER, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The State's attorney of Cook county filed an information in chancery in the circuit court of that county against appellant, the clerk of the municipal court of Chicago, praying for an order directing said clerk to pay and turn over to the State's attorney any and all fees, fines, forfeitures and penalties received by him as clerk of said court since July 6, 1913, and that he be enjoined and restrained from interfering with or preventing appellee from collecting such

fees, fines, forfeitures and penalties in all cases arising in Cook county that are or may be pending in said municipal court in which the State of Illinois is a party. A demurrer to the bill was overruled, after which an answer was filed. The trial court entered a decree as prayed for in said bill, except as to fines and forfeitures collected under certain enumerated acts, to which we shall refer later. An appeal was prayed from that decree. Appellee has assigned cross-errors as to that portion of the decree affecting said excepted acts of the legislature.

The information is based upon the provisions of the act of the legislature approved June 11, 1912, (Laws of 1912, —Special Sess.—p. 88,) as amended by an act approved June 27, 1913, (Laws of 1913, p. 360,) fixing the salaries of the State's attorneys of Illinois and their assistants. Section 1 of that act as amended provides for the pay of the State's attorneys of the various counties, section 2 as to the assistant State's attorneys, and sections 3 and 4 (the part of the act here under consideration) read as follows:

"Sec. 3. The salaries of the State's attorneys, excepting that part which is to be paid out of the State treasury as now provided for by law, shall be paid out of the county treasury of the county in which the State's attorney shall reside, in quarterly annual installments on the order of the county board on the treasurer of said county: *Provided,* that the fees which are now, or may hereafter, be provided by law to be paid by the defendant or defendants, as State's attorney's fees, shall be taxed as costs and all fees, fines, forfeitures and penalties shall be collected by the State's attorney, and shall be paid by him direct into the county treasury. Which said fund shall be held as a special fund to be paid out and distributed as follows: Out of said fund the salaries of the State's attorney and all assistant State's attorneys shall be paid, or so much thereof as said fund will meet, the balance of said salaries, if any, to be paid by said county as herein otherwise provided: *And further*

*provided,* that on July first of each year, the county treasurer shall, if there remain in said fund after paying said salaries then due and lawful employees of said State's attorney's office and other legal expenses, of said State's attorney's office, and retaining a sum sufficient to pay one quarterly payment of said salaries, and balance, pay over said balance to the county superintendent of schools of said county to be by him turned into and to become a part of the distributable school fund of said county, to be by said county superintendent distributed as. now provided by law in relation to said distributable school fund. The county treasurer shall receipt therefor.

"Sec. 4. It is hereby made the duty of all State's attorneys to report at each term of the circuit court, the payment and collection of all fees, fines, forfeitures and penalties and to satisfy the court by voucher or otherwise, that all fees, fines, forfeitures and penalties by them collected, have been duly paid over to the county treasurer, as required by section 3 of this act, and the State's attorney shall have no further interest in conviction fees, fines, forfeitures and penalties or moneys collected by virtue of such office."

Section 5 in general terms repeals all laws and parts of laws in conflict with the act, and section 6 specifically repeals an act on the same subject approved June 5, 1911, in force July 1, 1911.

The case has been brought direct to this court on the ground that a constitutional question is involved. Section 10 of article 10 of the constitution of 1870 provides that "the county board, except as provided in section 9 of this article, shall fix the compensation of all county officers," etc. It is argued that this court has held that the State's attorney is a county officer, (*Cook County* v. *Healy,* 222 Ill. 310; *People* v. *Cook County Comrs.* 260 id. 345;) and that as the State's attorneys are not within the exceptions in section 9 of said article 10, the county board, under said

section 10 of the constitution, must fix their compensation; that the legislature, in attempting to fix the compensation of said State's attorneys as provided for in this act, has acted without authority. If article 10 contained all the provisions referring in any way to State's attorneys and their compensation there would be some force in this argument. Section 22 of article 6 provides for the election of State's attorneys in each county for four years. Section 25 of the same article, referring especially to Cook county, reads: "The judges of the superior and circuit courts, and the State's attorney, in said county, shall receive the same salaries, payable out of the State treasury, as is or may be paid from said treasury to the circuit judges and State's attorneys of the State, and such further compensation, to be paid by the county of Cook, as is or may be provided by law; such compensation shall not be changed during their continuance in office." Section 32 of the same article, among other things, provides: "All officers, where not otherwise provided for in this article, shall perform such duties and receive such compensation as is or may be provided by law." The duties and compensation of the State's attorneys are not "otherwise provided for" in said article. It follows, necessarily, from the wording of these provisions of article 6 of the constitution, that it was the intention of those who framed them that the law-making power of the State,—that is, the General Assembly,—was authorized to fix and regulate the duties and compensation of State's attorneys. The legislature has fixed their compensation since the constitution of 1870 was adopted, and it has always been assumed by everyone concerned in the administration of the law that the legislature had such authority. Indeed, to hold, as contended here, that the legislature does not possess this power would be, in effect, to overrule the decisions of this court in *Cook County* v. *Healy, supra,* and *People* v. *Williams,* 232 Ill. 519, where we had under consideration statutes regulating and fixing the sal-

aries of State's attorneys. The reasoning in *Wulff* v. *Aldrich*, 124 Ill. 591, only went to the extent of holding that the county board should fix the compensation of all county officers for which the constitution did not otherwise provide. This was the construction given to said section 10 of article 10 as to the county board fixing the. compensation of county officers, in *Jimison* v. *Adams County*, 130 Ill. 558, where it was held that said section did not control as to the compensation that should be paid county superintendents of schools, as section 5 of article 8 of the constitution provided, specifically, that "there may be a county superintendent of schools in each county, whose qualification, powers, duties, compensation, and time and manner of election, and term of office, shall be prescribed by law." This court there said that that constitutional provision vested "the power of fixing the compensation of county superintendents of schools in the legislature of the State, therefore such superintendents do not belong to that class of county officers whose compensation is to be fixed by the county board, as provided in section 10 of article 10 of the constitution." The reasoning in that case must control here. To hold that the provisions of section 10 of article 10 would control as to the compensation of State's attorneys would render meaningless the provisions of sections 25 and 32 of article 6, heretofore quoted, bearing on this question.

The further argument is made that this act is in contravention of that part of section 12 of article 10 of the constitution which provides that the General Assembly shall by general law, uniform in its operation, provide for and regulate the fees of officers and their successors, so as to reduce the same to a reasonable compensation for services actually rendered. The argument of counsel, as we understand it, on this point is, that under the provisions of this statute all the fees earned by the State's attorney in any given county may not be required to pay for the salary of the State's attorney or other legal expenses of the office

and some balance may be turned over to the county; that it was never intended that the fees so earned should be used for any other purpose than for paying the officials earning them. This argument is without merit. The fee system, where the salary of the public official depends entirely upon the amount of fees collected by him, is liable to result in many evils and is contrary to the spirit of this section of the constitution. The worst of these evils is not the amount of money that a public official collects from such fees, whether that be great or small, but in the effect such a system has upon the public mind towards officials so paid. While such a system may or may not result in scandals from a misuse of the funds, it is certain to undermine public confidence in the honesty and integrity of public officials. The placing of the State's attorneys on a regular salary, all fees going to the public, will tend greatly to lessen these evils and is in full accord with the purpose in the minds of those who drafted this provision of the constitution. The statute in question is not unconstitutional for the reasons urged.

The principal question argued here is the proper construction to be given to this statute as to the authority and duty of the State's attorney touching the collection of fees, fines, forfeitures and penalties, counsel for appellee arguing that the State's attorney must receive and collect all fees, fines, forfeitures and penalties that the law requires paid in all cases, prosecutions and actions arising in the county in which the State is a party; that no clerk of a court or justice of the peace or other public official is now authorized, under this act, to accept any of such fines, fees, forfeitures or penalties, as they were previous to its passage; that this act repeals, directly or by implication, all provisions of other statutes not in harmony with said act, construed as here contended for. It appears that there is a controversy on this question not only between the State's attorney and appellant, but between the State's attorney and

many other public officials who are collecting fines and forfeitures in Cook county, as to the proper construction of the act here under consideration. A better understanding can be had of the intent of the legislature in passing this law if the statutes touching State's attorneys' compensation in force since the adoption of the constitution of 1870 be referred to briefly.

The first general statute on this subject, in force July 1, 1872, provided that each State's attorney should be paid by the State the sum of $400 each year, quarterly, out of any money in the treasury not otherwise appropriated and be allowed fees in certain enumerated cases, with ten per cent commissions on all moneys, except revenue, collected by him, and also required the State's attorney to make a report at every term of the circuit court as to his fines and collections. The statute on fees, fines and forfeitures was amended by an act which went into force July 1, 1883. The only material change bearing on the question here under consideration was that the State's attorneys should have "a lien for their fees on judgments for fines or forfeitures procured by them for their fees and earnings until they are fully paid," etc. This statute was amended by acts going into force July 1, 1889, July 1, 1907, and July 1, 1909, but none of these amendments affected the questions here under consideration. Several laws were passed previous to this last date which affected only Cook county, the first one July 1, 1871, which fixed the salary of the State's attorney of Cook county at $7000, the balance over and above the amount paid by the State to be paid by Cook county. An act was passed going into force July 1, 1901, which fixed the salary of the State's attorney of Cook county at $10,-000. This provision of the act having been declared unconstitutional in *Cook County v. Healy, supra,* to obviate the defects in the act last referred to, an act was passed going into force July 1, 1907, again fixing the fees of the State's attorney of Cook county at $10,000. The general statutes

governing fees, fines and forfeitures as to State's attorneys applied also to the State's attorney in Cook county. On July 1, 1911, an act went into force applying to all of the State's attorneys in the State, fixing their salaries and providing for the appointment and salaries of assistants. The act provided that the salaries of State's attorneys, except that part ($400) paid out of the State treasury, should be paid out of the county treasury of the county in which the State's attorney resided. Section 3 of that act provided: "It is hereby made the duty of all State's attorneys to report the collection and payment of fines to the proper authorities, as is now or may hereafter be provided by law, and the State's attorney shall have no further interest in fines, conviction fees, penalties, or moneys collected by virtue of such office other than to see that they are paid to the proper authorities." Said section 3 is identical with section 4 as amended July 1, 1912, heretofore referred to. Section 4 as amended July 1, 1913, as shown by said quoted section in the early part of this opinion, added to the provisions of the law as originally enacted the requirements of reporting to the circuit court at each term and that the moneys collected should be paid to the county treasurer instead of to the "proper authorities." The word "forfeitures" was also added by this amendment.

Before the enactment of said amendment of July 1, 1913, the State's attorneys, as well as other officials collecting fines, forfeitures and penalties, were required to pay them over to the county superintendent of schools. This provision was in the School law previous to the constitution of 1870. By the same act the clerks of courts of record and justices of the peace collecting such fines and forfeitures were required to make an annual report to the county superintendent of schools. This law was enacted February 1, 1865, and remained in force until July 1, 1872, when an act revising the School law of the State was passed. The provisions as to the disposition of fines, penalties and

forfeitures and reporting thereon, in that act, were substantially the same as under the law of 1865. (Laws of 1871-72, p. 743.) The School law was revised again by an act that went into force July 1, 1889. This latter act practically re-enacted the provisions as to the paying over of fines, penalties and forfeitures by the clerks of courts of record, justices of the peace and State's attorneys to the county superintendent, but amended the law as to reports, requiring them to be made to the county court of each county instead of to the county superintendent, and added a provision that the State's attorney should make an annual report as well as the clerks of courts of record and justices of the peace. (Laws of 1889, p. 335.) The School law was again revised by an act that went into force July 1, 1909. The provisions as to fines, penalties and forfeitures were identical in this act with the provisions in the act of 1889. (Hurd's Stat. 1913, secs. 238-243, inclusive, p. 2228.) The act of 1909 is still in force and the provisions as to fines, penalties and forfeitures still apply, except so far as said State's Attorney Salary act, as amended July 1, 1913, has modified them.

A study of these various acts as they affect the compensation of the State's attorney and the collection and disposition of fines, penalties and forfeitures demonstrates that the chief purpose of the State's Attorney Salary act, as amended July 1, 1913, was to provide a method of paying the State's attorneys regular salaries quarterly, using therefor, so far as required, all the proceeds of fines, penalties and forfeitures collected by various officials, the net proceeds of which theretofore had been paid over to the county superintendents of schools for general school purposes, and further providing that if after the payment of such salaries there was any balance left, such balance should be paid to the county superintendents, to be used for school purposes. Counsel for both parties will doubtless agree as to the statement just made but sharply disagree as to whether the net

proceeds from any fines, penalties and forfeitures which prior to July 1, 1913, were paid to other public officials than the county superintendents of schools and used for other than school purposes, should under said act of July 1, 1913, thereafter be diverted from such former objects and purposes and used for school purposes, the same as the net proceeds of fines, penalties and forfeitures which had theretofore been used for school purposes. We shall be assisted in reaching a proper conclusion on this question by considering some of the provisions of the various acts which were excluded by the decree of the circuit court.

Counsel for appellee, under their cross-errors, question the correctness of the ruling of the trial court as to the provisions of some fifteen different statutes, viz.:

(1). As to the disposition of the fines collected under an act in force July 1, 1885, to prevent fraud in the manufacture and sale of commercial fertilizers. (Hurd's Stat. 1913, p. 44.) Section 6 of this act provides that a suit shall be brought for the recovery of fines or damages, under the provisions of the act, in the county in which the fertilizer was offered for sale or where manufactured, "and all fines so recovered shall be paid into the treasury of the State board of agriculture by the court collecting the same."

(2) The disposition of the fines under an act concerning Canada thistles, in force March 15, 1872, (Hurd's Stat. 1913, p. 135,) paragraph 8½ of which provides that the fines thereunder are "to be sued for in any court of competent jurisdiction in the name of the town on complaint of any land owner of the town; said fine when collected to be paid to the supervisor or county commissioner and become a part of the town or precinct fund."

(3) The disposition of fines and penalties under an act relating to the Illinois and Michigan canal, in force July 1, 1874, (Hurd's Stat. 1913, p. 138,) section 27 of the act providing that "all fines and penalties herein provided for may be recovered before any justice of the peace of the

proper county, in the name of the People of the State of Illinois, and when collected shall be paid to the commissioners, and by them paid into the State treasury as other revenues of the canal."

(4) The disposition of fines under an act to protect cemeteries and provide for their regulation, in force July 1, 1885, (Hurd's Stat. 1913, p. 156,) section 1 of which provides that the fines recovered under this provision "shall be paid over by the court or officer receiving the same to the cemetery association and be applied, as far as possible, in repairing the injury, if any, caused by such offense."

(5) The disposition of fines for the violation of the Fish and Game act, approved June 23, 1913, (Hurd's Stat. 1913, p. 1310,) the 60th section of which provides that "all fines imposed for a violation of any of the provisions of this act shall, when collected, be paid to the State treasurer, by the justice of the peace, clerk of court, or other officer by whom such fine is collected."

(6) The disposition of the penalties collected under an act to regulate the surrender and placing of children, in force July 1, 1905, (Hurd's Stat. 1913, p. 240,) section 4 of which provides that any penalties under the act may be recovered "in action of debt before a justice of the peace or any competent court, for the benefit of the school fund of the district in which recovery is had."

(7) The disposition of fines paid in money in prosecutions for cruelty to animals or children, under an act with reference thereto in force July 1, 1885, (Hurd's Stat. 1913, p. 885,) section 1 of the act providing that all fines paid in money through the agency of the humane society shall, when collected, be paid into the treasury of such society, to be applied towards its support.

(8) The disposition of the penalties prescribed in the Pharmacy act, in force July 1, 1901, (Hurd's Stat. 1913, p. 1606,) section 15 of which provides that "all suits for the recovery of the several penalties prescribed in this act shall

be prosecuted in the name of the 'People of the State of Illinois,' in any court having jurisdiction, and it shall be the duty of the State's attorney of the county where such offense is committed to prosecute all persons violating the provisions of this act upon proper complaint being made. All penalties collected under the provisions of this act shall inure to the board of pharmacy."

(9) The disposition of fines and penalties collected under an act to regulate dental surgery, in force July 1, 1909, (Hurd's Stat. 1913, p. 1612,) section 16 of the act providing, "all fines imposed and collected under this act shall be paid to the Illinois State Board of Dental Examiners for its use."

(10) The disposition of penalties under an act in force July 1, 1877, (Hurd's Stat. 1913, p. 1948,) to compel railroad companies to build and maintain depots, section 2 of the act providing that after ninety days' failure to comply with the provisions of said section, after notice, the railroad company shall pay to the town or village for each day's neglect the sum of $50, "to be recovered in an action of debt before any justice of the peace, in the name of the People of the State of Illinois, in any town or village aggrieved. Said penalty to be paid to the said town or village for the school fund."

(11) The disposition of fines provided for under an act in relation to fencing and operating railroads, in force July 1, 1874, (Hurd's Stat. 1913, p. 1951,) section 11 of said act providing that fines under the said act shall be enforced "in the name of the People of the State of Illinois, before any court of competent jurisdiction in the county. Such fine, when collected, to be paid into the treasury of the authorities enforcing the fine."

(12) The disposition of the moneys arising from the enforcement of certain provisions of an act to establish railroad and warehouse commissioners, in force July 1, 1871, (Hurd's Stat. 1911, p. 1847,) section 18 of which pro-

vides that all prosecutions thereunder shall be in the name
of the People of the State of Illinois, and "all moneys aris-
ing therefrom shall be paid into the State treasury by the
sheriff or other officer collecting the same," etc. It may be
questioned whether this law is not repealed by the Public
Utilities Commission act, in force July 1, 1913. (Laws
of 1913, p. 459.) We merely suggest this point, without
considering or deciding it in this case.

(13) The disposition of fines and penalties recovered
under the provisions of an act to revise the law in relation
to roads and bridges, in force July 1, 1913, (Hurd's Stat.
1913, p. 2150,) section 156 of said act providing that "all
fines and penalties recovered under the provisions of this
act for offenses committed upon or in relation to State aid
roads, shall, unless otherwise provided, be paid over to the
county treasurer, and by him transmitted to the State treas-
urer to become a part of the State road and bridge fund.
All fines and penalties recovered under the provisions of
this act for offenses committed upon or in relation to all
other roads shall, unless otherwise provided, be paid over
to the treasurer of the road and bridge fund of the town
or district where the offense is committed to be expended
upon the roads and bridges in said district or town," etc.

(14) The disposition of fines collected as to motor ve-
hicles under the Motor Vehicle law, (Hurd's Stat. 1913,
p. 2155,) section 18 of which provides that all fines im-
posed for the violation of any provision of the act shall be
paid "to the treasurer of the highway commissioners of the
township or road district in which the offense is committed
by the justice of the peace, clerk of the court, or other offi-
cer to whom the amount of such fines shall be by law re-
quired to be paid by the constable, bailiff, sheriff, or other
officer, * * * and all money so received by the treasurer
of the highway commissioners shall be used in repairing
and improving the roads within such township or road dis-
trict," with the further provision that if the violation oc-

curs within the limits of a city, village or incorporated town the fines shall be paid to the treasurer of the city, village or incorporated town or to the park commissioners within whose jurisdiction the offense is committed.

(15) The disposition of fines and penalties under the State Pure Food law, in force July 1, 1907, (Hurd's Stat. 1913, p. 2321,) section 27i of which provides that "all fines, penalties, and all proceeds collected from goods confiscated and sold under the provisions of this act and other laws relating to dairy and food products, and all license fees collected hereunder, shall be paid into the State treasury."

The disposition of the fines and penalties under said fifteen specified acts is all that is questioned by the cross-errors by counsel for the appellee. There are, however, fines and penalties under other acts, which, if the reasoning of counsel for the appellee is to be followed, might also reasonably be construed in the same manner. We will refer to a few of them.

Under section 9 of the act to revise the law in relation to the State library, in force July 1, 1874, (Hurd's Stat. 1913, p. 2343,) it is provided that all fines and forfeitures accruing by virtue of the act shall be recoverable in the name of the People of the State of Illinois, to the use of the State library. Section 14 of the act requiring reports on births and deaths, in force July 1, 1903, (Hurd's Stat. 1913, p. 2291,) provides that all fines collected under the provisions of the act shall be paid into the county treasury of the county, the State's attorney prosecuting. It is not stated that the State's attorney shall collect these funds or that any of the net proceeds left after paying the legal expenses of the State's attorney's office shall be paid over to the school fund. Under the act relating to employment offices and agencies, in force May 11, 1903, (Hurd's Stat. 1913, p. 1185,) as amended by an act in force July 1, 1909, it is provided in section 12 that all moneys received from fees and fines under the act shall be held by the commis-

264 — 31

sioners of labor and shall constitute a fund for the purpose
of enforcing the provisions of that act. Under section 52
of the act on fees and salaries as amended, (Hurd's Stat.
1913, p. 1276,) it is provided that any officer failing to
make reports and perform other enumerated duties as re-
quired shall be deemed guilty of malfeasance in office and
on conviction may be fined for each offense, one-half of
the fine to go to the complainant and the other half to the
county treasurer. Under the act for the regulation of for-
eign fire insurance companies, in force July 1, 1879, (Hurd's
Stat. 1913, p. 1389,) it is provided in section 4 that for a
failure to comply with the provisions of that act a penalty
may be enforced, to be sued for and recovered in the name
of the People of the State of Illinois by the State's attor-
ney, one-half of the penalty recovered to be paid to the in-
former and the other half into the treasury of the county.
Under the Wife and Children Abandonment act, in force
July 1, 1903, (Hurd's Stat. 1913, p. 1365,) it is provided
that a person found guilty under the act shall be guilty of
a misdemeanor and on conviction may be punished by fine
or imprisonment. The fine may be paid, in whole or in
part, to the wife or to the guardian or custodian of the
minor children. Under the act for oil inspection, in force
July 1, 1874, (Hurd's Stat. 1913, p. 1712,) it is provided
by section 8 that the fines shall be recovered thereunder in
the name of the People of the State of Illinois, and, when
collected, one-half shall be paid to the informer and the
other half paid into the city, village or town treasury.

If the construction of the State's Attorney Salary act
be as contended for by counsel for appellee, then it might
well be argued that the provisions of every one of the acts
just referred to as to the disposition of fines and penalties,
as well as many other statutes inflicting fines and penalties
not referred to in this opinion, would be repealed and all
such fines and penalties be paid to the State's attorney, to
be applied towards the payment of the salaries and legal

expenses of his office, the net proceeds, if any, being paid thereafter into the school fund.

Counsel for appellee argue that the amendatory act of 1913 expressly repeals "all laws or parts of laws in conflict" therewith, and that the provisions · of all these excluded laws as to the disposition of fines are in conflict with the Salary act. While the insertion of a general provision in a statute declaring a repeal of all inconsistent acts or parts of acts (without naming any particular act) implies that the new statute is to some extent repugnant to certain laws theretofore enacted, the insertion of such a general repealing clause is generally held to add nothing to the repealing effect of the act. Logically, such a general repealing section adds nothing to the language or meaning of the act and takes nothing from it. All prior conflicting laws and parts of laws are impliedly repealed by conflicting provisions of the law enacted. (1 Lewis' Sutherland on Stat. Const.—2d ed.—sec. 256, and cases there cited.) Repeals by implication are not favored. Under the authorities both statutes remain in force unless they are so repugnant that they cannot operate together.· (*People* v. *Harrison,* 185 Ill: 307; *People* v. *Raymond,* 186 id. 407; *Galpin* v. *City of Chicago,* 249 id. 554.) The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. (*Cruse* v. *Aden,* 127 Ill. 231.) In determining the meaning of a statute the court will always have regard to existing circumstances, contemporaneous conditions, the objects sought to be attained by the statute and the necessity or want of necessity for its adoption. (*People* v. *Kipley,* 171 Ill. 44.) In seeking for such· an intention we are to consider the language used by the legislature, the evil to be remedied and the object to be attained. (*Hogan* v. *Akin,* 181 Ill. 448.) In construing a statute the courts are not confined to the literal meaning

of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not within the intention. When the intention can. be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention. (*Krome* v. *Halbert,* 263 Ill. 172.) It is a well established rule in construing statutes, that when great inconvenience or absurd consequences will result from a particular construction that construction should be avoided, unless the meaning of the legislature be so plain and manifest that avoidance is impossible. (*People* v. *Wren,* 4 Scam. 269.) When the literal enforcement of a statute would result in great injustice and lead to consequences which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended and adopt a construction that it may be reasonable to presume was contemplated by the legislature. (*Bryan* v. *Buckmaster,* Breese, 408; *People* v. *Harrison,* 191 Ill. 257.) Surely, the legislature never intended, in the passage of the State's Attorney Salary act here in question, to radically change so many other statutes as to the disposition of the moneys collected from fines, penalties and forfeitures, as contended by appellee. To so construe the Salary act requires that the word "all" should be held to include not only fines, forfeitures and penalties that had theretofore gone into the hands of the county superintendents for the benefit of the school fund, but all fines, forfeitures and penalties collected under all these other acts which for many years had gone for other purposes. To put that construction on it would require the repeal, by implication, of the specific provisions of the Motor Vehicle law requiring the fines and penalties thereunder to be paid into the school fund instead of being used for the benefit of the public highways in the vicinity where the act was committed. This would effectually destroy one of the principal features of the Motor Vehicle act. To so

construe the Salaries act would repeal, by implication, the
provisions of the Fish and Game act, approved only four
days before the State's Attorney Salary act and which went
into force on the same day as the latter act. Moreover,
such a construction would repeal, by implication, the pro-
visions of the Road and Bridge act, which was approved
and in force the same day as the State's Attorney Salary
act. To place such a meaning on the State's Attorney Sal-
ary act is contrary to all well settled rules of statutory con-
struction. The presumption is stronger against implied re-
peals where the provisions are supposed to be in conflict with
acts passed at or about the same time. Statutes enacted at
the same session of the legislature should receive a con-
struction, if possible, which would give effect to each. Each
is supposed to speak the minds of the same set of law-
makers, and the words used in each should be qualified and
restricted, if necessary, so as to give validity and effect to
both acts. The presumption is that different acts passed at
the same session of the legislature are not intended to de-
stroy each other, unless the acts in express terms so state.
(1 Lewis' Sutherland on Stat. Const.—2d ed.—sec. 268.)
If the reasoning of counsel for appellee is sound, then it
might well be argued that the Road and Bridge act, passed
the same day, repealed, by implication, the provisions of the
State's Attorney Salary act wherein they are repugnant.

All seeming conflict between the acts in question can be
harmonized or done away with by giving a reasonable con-
struction to the word "all." In the State's Attorney Sal-
ary act the purpose sought was to have all State's attor-
neys and their assistants placed upon regular salaries, to be
paid out of such fines, penalties and forfeitures of the kind
the net proceeds of which theretofore had been paid over
to the county superintendents for school purposes. So con-
strued, the only change in the existing laws as to the col-
lection and disposition of fines, penalties and forfeitures
is, that hereafter all fines, penalties and forfeitures the net

proceeds of which heretofore went into the school fund, instead of being paid over, in part, by clerks of courts or justices of the peace to county superintendents of schools shall be paid by them to the State's attorney of the proper county and by him paid into the county treasury, the county superintendent receiving from the county treasury the net proceeds or balance, if any, after the payment of the salaries of the State's attorney, assistant State's attorneys and legal expenses of the State's attorney's office, instead of being paid in part by the State's attorney and in part by clerks of courts of record and justices of the peace. The law as to the disposition of fines, penalties and forfeitures is changed in no other particulars. Such fines, penalties and forfeitures the proceeds of which heretofore have gone to the county superintendent of schools are to be paid over to the State's attorney; all other fines, penalties and forfeitures are to be paid as required by the specific provisions of each particular statute. Under the statutes as they now exist the State's attorney has a lien for the collection of his fees earned, the same as he had before, but these fees, when collected, are to be paid into the county treasury. Such a construction of the Salaries act is not unreasonable or absurd, will lead to no great inconvenience, and is in full accord with the purpose and intent of the legislature as shown by the wording of the State's Attorney Salary act.

The further question remains for consideration as to whether the decree is correct in enjoining and restraining appellant from collecting any such fines, forfeitures and penalties in suits arising in the municipal court of Chicago in which the State of Illinois is a party. In our judgment the legislature did not intend to prevent the clerks of courts of record or justices of the peace or other officials who have heretofore lawfully collected fines, penalties and forfeitures, from thereafter collecting such fines, penalties and forfeitures. The legislature intended that instead of the

clerks of courts and justices of the peace paying over such fines, penalties and forfeitures to the county superintendent of schools they should pay them over to the State's attorney of the county in question; that instead of turning them over yearly, as heretofore required by the provisions of the School law, they should turn them over as they were collected, so that the salary of the State's attorney could be paid quarterly and he could make his report, in accordance with the provisions of the statute, at each term of the circuit court. The collection of such fines, forfeitures and penalties and payment to the State's attorney in this manner is practically a collection by the State's attorney, the same as it is when these forfeitures and penalties are sometimes required to be enforced, under the statute, by the sheriff. If the last named official actually takes the money in settlement of the claim and turns it over to the State's attorney it is still a collection by the State's attorney. The person who is required to pay the fine, penalty or forfeiture, necessarily, under this construction, could pay it personally to the State's attorney if he desired and trust to the latter official to see that it was satisfied of record. No statute, so far as we are advised, has heretofore required the payment of any such fines, penalties or forfeitures to the State's attorney, and yet, in general practice, it was often done. If the State's attorney were present in the clerk's office or in open court at the time the fine, penalty or forfeiture was paid it could be paid personally to said State's attorney and satisfied of record. If he is not there, however, the clerk of the court or justice of the peace, under this construction, is authorized to accept the payment of such fine, penalty or forfeiture along with the costs in the case, turning over the net proceeds thereafter to the State's attorney as soon as requested. Any other construction of this statute seems most unreasonable, and would lead to great inconvenience and unnecessary circumlocution

in the settlement and satisfaction of such fines, penalties or forfeitures. The circuit court erred in decreeing otherwise.

The decree of the circuit court will therefore be reversed and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*