WALTER W. SPEARS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1906.*

1. ·CRIMINAL LAW—*acquittal on charge of embezzlement does not bar a prosecution for forgery.* Acquittal of a salesman on a charge of larceny and embezzlement, based upon his having made a sale for cash, part of which he appropriated to his own·use, turning in therefor notes forged by. him in the name of the purchaser, does not bar a prosecution for forging the note, notwithstanding the notes were offered in evidence on the former trial.

2. SAME—*refusing instruction stating an abstract rule of law is not error.* Refusing an instruction, in a prosecution for forgery, merely defining a criminal offense as consisting in a violation of the public law in the commission of which there should be a union or joint operation of act and intention or criminal negligence, is not error, particularly where other instructions given fully present the question.

3. FORGERY—*when there·is intent to defraud.* An intent to defraud in forging notes is shown even though the defendant, when he forged the notes and turned them in in lieu of cash belonging to his employer which he had appropriated to his own use, intended to pay them as they fell due.

4. TRIAL—*fining counsel for accused, in presence of jury, for contempt, is not error.* Where counsel for the accused persists in reverting to an improper matter in making his argument to the jury in spite of repeated admonishings from the court, the facts that the court fined him for contempt and that he paid his fine in open court are not ground for reversal, as tending to prejudice the defendant's case in the minds of the jury.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BURRES & McKINLEY, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (FRANK CROWE, and ALBERT H. MEADS, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an indictment, returned at the April term of the criminal court of Cook county by the grand jury of that county against the plaintiff in error for forgery. The trial, which took place at the July term, 1905, of said court, resulted in a verdict, finding the plaintiff in error guilty, as charged in the indictment; and after motions for new trial and in arrest of judgment were overruled, judgment was rendered on the verdict in the usual form, sentencing the plaintiff in error to the penitentiary at Joliet for the crime of forgery. Motion was entered by plaintiff in error to vacate the sentence, which motion was continued to the September term, 1905, of said court and overruled. Exceptions were taken to the judgment, and to the overruling of the motion to vacate. The present writ of error is sued out for the purpose of reviewing said judgment of the criminal court of Cook county.

The indictment contained two counts. The first charged that plaintiff in error on August 26, 1903, in Cook county, did feloniously, fraudulently and falsely make, counterfeit and forge a certain promissory note as follows:

"CHICAGO, ILL., *Aug. 26, 1903.*

"Four months after date, for value received I promise to pay to the order of the National Cash Register Co., Dayton, Ohio, thirty dollars at Chicago.

GEO. C. DEMUTH."

—with intent to damage and defraud the National Cash Register Company, a corporation organized under the laws of the State of New Jersey, contrary to the statute, etc. The second count charges that the plaintiff in error feloniously and fraudulently did pass the said false and forged promissory note on August 26, 1903, in Cook county, then and there knowing the same to be false and forged, with intent to damage said National Cash Register Company, contrary to the statute, etc.

*First*—The first and main ground for reversal, urged upon our attention by counsel for plaintiff in error, is that the trial court refused to allow counsel for plaintiff in error to introduce the record of a former trial of the plaintiff in error, resulting in his acquittal upon the charge of larceny by embezzlement, and to refer to the same in his opening statement to the jury. At the close of the case the jury was excluded for the purpose of a hearing by the court of a motion by counsel for plaintiff in error to take the case from the jury upon the ground of such former trial and acquittal. The theory, upon which the record in the larceny and embezzlement case was sought to be introduced in the case at bar, was that such evidence would have supported a plea of *autrefois acquit.*

According to the statement of counsel for the plaintiff in error in support of said motion, it appears that, prior to November, 1903, the plaintiff in error for some time had been an employe of the National Cash Register Company, and in December, 1903, was indicted for larceny and embezzlement. Plaintiff in error had been engaged as salesman in the service of said company during the years 1903 and 1904, selling for the company cash registers manufactured by it, he being the company's agent and salesman in the city of Chicago. He was authorized not only to make sales, but to collect the cash on sales, made by him, and to take promissory notes in payment of registers sold. On or about August 26, 1903, as such agent, he sold a cash register to said George C. Demuth, and received cash for the same for the full amount of the purchase price, a part of which he at once remitted to the company, but retained the remainder. He made several promissory notes, including the one set out in the indictment, which purported to be executed by said Demuth, payable to the National Cash Register Company, bearing date August 26, 1903, and handed them to the cashier of said company at its branch office in Chicago, instead of turning over all of the cash received on making the sale. It is not denied by

plaintiff in error, but admitted by him in his testimony, that he signed the name of George C. Demuth himself, and that the notes were not really executed by Demuth. It does not appear from the evidence that he informed the company, when he turned these notes in, that they were not signed by Demuth, but had been signed by himself, nor does it appear from the evidence that the company at that time knew that the notes were not the genuine notes of George C. Demuth. It is claimed by the plaintiff in error that, when the first of this series of notes became due, he went to the office of the company and paid it, the amount being $30.00. This claim, however, is disputed by the State, whose statement upon this subject is, that the first note was included in a statement of other indebtedness and collections, made by plaintiff in error, which amounted to $340.00, and for which he turned in a customer's check of $15.00 and his own check of $325.00, on September 19, 1903, which check came back from the bank unpaid, and marked, "Not sufficient funds," as he had at that time in the bank only $2.92; so that, in fact, as is claimed by the State, none of the notes, to which plaintiff in error signed the name of Demuth, were ever paid. At the first trial plaintiff in error was charged with embezzling and stealing the sum of $200.00 of the company, which, it was claimed, he had received from Demuth on the sale of a cash register, and it is now said that he was then indicted, tried and acquitted on a charge of embezzlement and larceny, growing out of the same transaction; and, in support of the defense of *autrefois acquit,* counsel for plaintiff in error offered in evidence the indictment, verdict and judgment and bill of particulars, as introduced on the former trial, which the court below in the trial of the case at bar declined to receive in evidence.

The first trial was for larceny and embezzlement, while the indictment and trial in the case at bar were for the crime of forgery. It is clear that the acquittal in the former indictment and trial is no bar to the present prosecution.

To sustain the plea of *autrefois acquit* the offenses must be identical, and the fact, that an instrument was offered in evidence in a former trial, will not prevent a prosecution for unlawfully passing it. (*United States* v. *Randenbush,* 8 Pet. 288). "Unless the first indictment was such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second." (2 Russ. on Crimes, 41; 1 id. 831; *Rex* v. *Vandercomb,* 2 Leach, 816; *Burns* v. *People,* 1 Parker's Cr. 182).

In *Commonwealth* v. *Roby,* 12 Pick. 496, it was said by Chief Justice Shaw: "If the crimes charged in the former and present prosecution are so distinct that evidence of the one will not support the other, it is inconsistent with reason, as it is repugnant to the rules of law to say, that the offenses are so far the same that an acquittal of the one will be a bar to the prosecution for the other." In the same case it was also said by the same distinguished judge: "In considering the identity of the offense it must appear by the plea that the offense charged in both cases was the same in law and in fact. The plea will be vicious if the offenses charged in the two indictments be perfectly distinct in point of law however nearly they may be connected in fact." (*People* v. *Saunders,* 4 Parker's Cr. 196).

The same views above announced have been held and adopted by this court. In *Freeland* v. *People,* 16 Ill. 380, we said (p. 382): "Greenleaf states the rule to be, that, if the defendant upon the first indictment could not have been convicted of the offense described in the second, then an acquittal or conviction upon the former is no bar to the latter. (3 Greenleaf on Evidence, sec. 36). And this we hold to be the true rule. If the defendant could not by any legal possibility have been convicted, upon the former prosecution of the offense charged in the second, he can in no just sense be said to be in peril of a second conviction on the same offense." It is clear that on the former trial, which was an

indictment for larceny and embezzlement, plaintiff in error could not have been convicted of forgery, and hence a plea of *autrefois acquit* could not have been maintained in the case at bar.

In *Guedel* v. *People,* 43 Ill. 226, it was held that, where a person was indicted for a murder, committed by shooting with powder and shot from a gun, and was acquitted, and was afterward indicted for the same murder, and convicted, and in the second indictment the offense was alleged to have been done by beating upon the head with a gun, the two indictments stated different offenses, and the acquittal on the first one was no bar to the second, the prisoner never having been in legal jeopardy.

In *Campbell* v. *People,* 109 Ill. 565, the case of *Freeland* v. *People, supra,* was referred to, and the doctrine therein announced was approved by this court, it being there said (p. 572) : "The rule laid down by Blackstone as to pleas of this character has been adopted by this court in *Freeland* v. *People,* 16 Ill. 380, and is, with reference to former acquittal or conviction, it 'must be upon a prosecution for the same identical act and crime.' All the authorities hold that, to entitle a defendant to the benefit of this plea, it is necessary the crimes, charged in the first and second indictments, should be the same, and that, if the crimes charged in the first and second indictments are so distinct that the evidence of the one will not support the other, a conviction or acquittal of the one will not bar a prosecution of the other,—or, adopting the language of this court in *Freeland* v. *People,* the rule may be stated to be, that to make the plea a bar, proof of the facts alleged in the second indictment must be sufficient in law to have warranted a conviction upon the first indictment of the same offense, charged in the second, and not of a different offense. The general rule, adopted for ascertaining the identity of the offenses, is as stated by Archbold in his work on Criminal Pleading, 106, where it is said: 'The true test, by which the question whether the plea is a bar in any particu-

lar case, may be tried, is, whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction on the first.' Substantially, the rule has been stated in the same way by Chitty in his work on Criminal Law, and as stated by both authors it has been adopted by this court." The fact, that the plaintiff in error was acquitted on the former trial, where the indictment was for larceny and embezzlement, cannot be held to be evidence of the want of an intent to damage and defraud in the case at bar.

In view of the authorities above quoted, to the effect that the acquittal in the embezzlement case was no bar to the prosecution of this forgery case, we are of the opinion that the trial court committed no error in its ruling upon this subject.

*Second*—It is contended on the part of the plaintiff in error that the trial court erred in giving the eighth instruction, which was given for the People upon the trial below. The instruction is long, and it is not necessary to set it out here. It is sufficient to say that it is the same instruction as the eighth instruction, set out and commented upon by this court in *Siebert* v. *People,* 143 Ill. 571, where we said of the eighth instruction so set out, and identical with the eighth instruction given for the People in the case at bar: "This instruction is fully sustained by *Hirschman* v. *People,* 101 Ill. 568, and *Rider* v. *People,* 110 id. 11, and we shall content ourselves by referring to these cases to sustain the action of the court in giving the instruction."

*Third*—It is next insisted that the trial court erred in refusing to give instructions, numbered 15, 16 and 17 asked by the plaintiff below upon the trial. These instructions related to the question of intent, and were fully covered by other instructions given in the case, and, therefore, no error was committed by their refusal. (*Painter* v. *People,* 147 Ill. 444; *Carlton* v. *People,* 150 id. 181; *Schintz* v. *People,* 178 id. 320). By other instructions given, the court told the jury,

as matter of law, that, by the statute of Illinois, every person, who shall falsely make, alter, forge or counterfeit a promissory note with intent to prejudice, damage or defraud any person, body politic or corporate, whether the said person, body corporate or politic resides in this State or not, shall be deemed guilty of forgery. The jury were thus told that there must be an intent to defraud.

One of the refused instructions merely defined a criminal offense in the language of the statute, as consisting in a violation of the public law, in the commission of which there should be a union or joint operation of act and intention, or criminal negligence. While this instruction was unobjectionable, and may well have been given, yet it is so general and abstract in its nature that its refusal cannot be regarded as error. In *Moore* v. *People,* 190 Ill. 331, we said in regard to a similar instruction: "It is not desirable to give instructions, which merely inform the jury on legal subjects and are not to be applied to the case or evidence, and it is not error to refuse an instruction of that kind." One of the instructions, whose refusal is complained of, told the jury that, upon the question of intent, the law presumes a man to intend the reasonable and natural consequences of any act intentionally done. This same principle was embodied in another instruction given to the jury, which was as follows: "The court instructs the jury that the law presumes a man to intend the reasonable and natural consequences of any act intentionally done." The refused instructions now under consideration proceed upon the theory that, although the defendant forged the notes, he may not have intended at the time he signed the notes to injure or defraud the National Cash Register Company, but that he merely signed them for the purpose of benefiting himself. That is to say, it is said that, when he signed the notes and turned them over to the company, he intended to pay the notes himself when they became due, although he did not at the time inform the company that they were not signed by Demuth, and that he intended to pay them. His

own testimony conflicts with the theory thus embodied in the instructions. Plaintiff in error, when upon the stand, admitted that he signed Demuth's name to the notes, and made the following statement: "My turning the note in was for the purpose of an accommodation, and my intentions were nothing but to defer the payment for my own accommodation." This clearly shows that there was an intent to defraud. This statement by plaintiff in error, after acknowledging that he had forged the note, was sufficient evidence to convict him of an intent to defraud. He forged the note and appropriated the money to his own use, handing over the forged note in the place and stead of the money which he had collected. In contending that he intended to pay the company in installments as the forged notes fell due, he merely indicates that he held the hope, so often entertained by criminals who appropriate money belonging to others, that he might return the money and thereby escape detection. He may have hoped to cover up his shortage by paying from month to month installments to the cash register company, and thus lead them to believe that the notes were genuine because they were met as they fell due, but even if he had succeeded in what he then hoped to do, such an intended course on his part is no defense against this prosecution for forgery, as he admits that he wanted to defer payment for his own benefit. That is to say, he wanted to use the money of the company for his own purposes. It is immaterial what may have been his intention, when he signed the note, and while it remained in his possession. The mere making and possession do not necessarily prove an intent to defraud. But the refused instructions ignore the question as to his intention when he passed or uttered the note by delivering it to the company. The intention to injure or defraud in such cases is usually proved "by showing that the forged instrument was uttered." (*Fox v. People,* 95 Ill. 71).

*Fourth*—The State put upon the stand a witness by the name of Holmes, who testified as to the handing over to the

company of the check and notes by the plaintiff in error to balance the account with the company. Upon the cross-examination of this witness, counsel for plaintiff in error asked him if he had not come to Chicago from Cleveland, Ohio, to testify. The question was objected to as immaterial, and the court sustained the objection. Even if the witness should have been allowed to answer the question, the refusal of the court to permit him to do so could have done plaintiff in error no harm, as, in a subsequent part of his examination, the witness stated that he did come from Ohio, and this statement was admitted without objection, so that, if there was any force in behalf of the plaintiff in error in the fact that the witness did come from Ohio, such fact was proven and presented as proven to the jury.

*Fifth*—In his argument to the jury counsel for plaintiff in error made the following statement: "If Spears owes the National Cash Register Company anything, it is fair to assume that he is under bond, and it is protected in that way, and can get its money very quickly." The court admonished counsel for plaintiff in error that this line of argument was objectionable, because there was no evidence in the record whatever that any bond had been given, and, therefore, it was not fair to assume in the presence of the jury that such bond had been given. Such statements were calculated to prejudice the jury by leading them to believe that the National Cash Register Company would not be damnified in any way, because it had a bond to fall back upon. After several admonitions from the court to refrain from this objectionable line of argument, counsel for the plaintiff in error proceeded to talk in the same vein about the bond, when there was no evidence that any bond had been given. Upon his refusal to obey the admonitions of the court thus given to him, the court fined him for contempt, and he paid the fine in open court. This circumstance is relied upon by the plaintiff in error, as tending to show that the action of the court prejudiced the case of the plaintiff in error in the minds of

the jury. We are unable to say that the court erred in respect to this matter. Counsel, in a most aggravating way, had disregarded the admonitions of the court, and it was the duty of the court to preserve and maintain its own dignity.

After a careful consideration of this record, we see no good reason for reversing the judgment of the court below. Accordingly, the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*