THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MORRIS L. FOX, Plaintiff in Error.

*Opinion filed October 27, 1915.*

1. STATUTES—*what may be considered in determining intention of the legislature.* In determining the intention of the legislature it is proper to consider the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in the former law which were intended to be remedied by the later enactment.

2. SAME—*when courts are not confined to the literal meaning of words used.* The literal language of a statute may be departed from and words may be changed, altered, modified or supplied, or omitted entirely, if such course is necessary to obviate any repugnancy between the language used and the intention of the legislature as gathered from a consideration of the whole act and the previous condition of legislation on the subject.

3. CRIMINAL LAW—*when a prisoner out on bail must be tried.* The provision of section 18 of division 13 of the Criminal Code, that a person admitted to bail "shall be entitled, on demand, to be tried at some term commencing within four months after he has been admitted to bail," means that he must first make demand for trial to set the statute in operation, and must then be tried at some term of court commencing not more than four months after making the demand, unless the court, on the showing required by the statute, continues the case to the next term.

4. SAME—*when allegation of ownership of burned goods is not material.* An allegation as to the ownership of the goods is not material in an indictment for burning goods to injure an insurance company, as the gist of the offense is the burning of the goods, whether owned by the accused or some other person, with intent to injure the insurer, and a variance between the allegation and proof as to such ownership is not fatal.

5. SAME—*when rule as to former jeopardy does not apply.* The rule that a person cannot be twice tried or put in jeopardy for the

same offense has no application where two separate and distinct crimes are committed by one and the same act.

6. SAME—*arson and burning goods to injure insurer are distinct offenses.* An acquittal on the charge of arson in burning a building is not a bar to a prosecution for burning goods to injure an insurance company, even though the goods and the building were destroyed in the same fire, as the crime of burning goods to defraud the insurer is not a part of the crime of arson but is a distinct offense.

7. SAME—*jury must be accurately instructed where chief witnesses are accomplices.* Where the chief witnesses against the accused are accomplices or self-confessed criminals in the employ of the State or of corporations interested in securing a conviction, it is important that the jury be properly and accurately instructed as to the law.

8. SAME—*when instruction as to reasonable doubt is misleading.* An instruction telling the jury that the doubt upon which they may acquit must be a reasonable doubt and not merely one of speculation or probability, and that the State is not required to prove the defendants guilty beyond all doubt, is misleading in leaving the impression that the jury might convict the defendants even though they thought there was a probability they were not guilty.

9. SAME—*when error cannot be disregarded.* It is essential to the preservation of the system of trial by jury that the jury be correctly instructed as to the rules of law governing them in weighing the evidence and determining the guilt or innocence of the accused, and no error of the court in performing its duty in that respect can be overlooked or disregarded, unless it is of such a character that it clearly appears the error could not have affected the verdict of the jury.

10. SAME—*jury should not be told to consider surrounding circumstances appearing on trial.* An instruction which is intended to inform the jury what things to consider in determining which witnesses are more worthy of credit should not include "the surrounding circumstances appearing on the trial."

11. SAME—*right of People to an instruction as to convicting upon circumstantial evidence.* The People are entitled to an instruction informing the jury of their right to convict upon circumstantial evidence if they believe, beyond a reasonable doubt, that circumstances have been proven to be true which cannot reasonably be accounted for except on the theory that the defendants are guilty of the crime charged.

12. SAME—*when court does not err in calling witness.* If the testimony of a witness, because of his connection with the trans-

action, is material in a criminal case but his relations with the parties and his testimony in other cases have been such that the State's attorney is not in a position to vouch for his credibility, it is not an abuse of discretion for the court to call him as a witness.

13. SAME—*what evidence admissible as tending to show guilty knowledge.* In a prosecution for burning goods to injure the insurer, evidence showing the association of the accused, after the fire, with persons implicated therein, the paying of attorneys for furnishing them services, the procuring of bail for some of them, and other similar activities, may be introduced as tending to show guilty knowledge, but matters wholly disconnected with the case should be excluded.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN M. O'CONNOR, Judge, presiding.

BRUNDAGE, LANDON & HOLT, and JOHN J. BEILMAN, (ROBERT N. HOLT, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, C. H. LINSCOTT, FRANK JOHNSTON, JR., JAMES C. O'BRIEN, and JOHN PRYSTALSKI, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error was indicted, tried and convicted in the criminal court of Cook county of the crime of burning goods, wares and merchandise with the intent to injure certain insurance companies. It was charged in the indictment that on March 7, 1912, plaintiff in error, David I. Felsenthal, Moe Rosenberg, Nathan Spira and Benjamin Fink, (otherwise called Ben Finkleberg, or Ben Franklin,) unlawfully, willfully, maliciously and feloniously set fire to a certain lot of woolen and cotton clippings, goods, wares and merchandise in a building known as 902-904 South Morgan street, in the city of Chicago, with the intent to injure and defraud the Ætna Insurance Company and other insurance companies therein named, in which the burned property was insured against loss by fire. Only plaintiff in error and Felsenthal were placed

on trial on the indictment. Spira was convicted under another indictment for a similar offense, Rosenberg plead guilty and Fink was granted immunity by the State's attorney, and both he and Rosenberg were used as witnesses on the trial. The jury acquitted Felsenthal but found the plaintiff in error guilty as charged in the indictment. Motions for a new trial and in arrest of judgment were made and overruled, judgment was entered on the verdict and plaintiff in error was sentenced to the penitentiary under the Indeterminate Sentence act. He has sued out this writ of error to reverse the judgment of the lower court.

The various errors assigned and relied upon for reversal will be considered in their order.

It is first insisted that the court erred in denying the plaintiff in error's motion to be set at liberty under section 18 of division 13 of the Criminal Code. (Hurd's Stat. 1913, p. 880.) It appears from the record that on April 3, 1913, the plaintiff in error, together with Felsenthal, Rosenberg and Fink, were indicted for the offense of burning goods with intent to injure insurance companies, under an indictment known as No. 815. Under this indictment plaintiff in error was arrested and gave bail on April 8, 1913. He was again indicted for the same offense on the present indictment on January 31, 1914, along with the other defendants and Nathan Spira, this indictment being known as No. 2507. The only difference between the two indictments was the adding of Nathan Spira as a defendant in the last indictment. No *capias* was issued on the last indictment, and plaintiff in error was never arrested on it but voluntarily appeared on April 24, 1914, and gave bail. On April 3 and 27, May 29 and June 3, 1914, being at the March, April, May and June terms, respectively, of the court, plaintiff in error appeared and demanded a trial on the first indictment, No. 815. On July 6, at the July term, 1914, plaintiff in error entered his motion to be discharged for the want of prosecution.

The court took the motion under advisement, and on July 9, 1914, before the court passed upon the motion to be discharged, the State's attorney entered a *nolle prosequi* to this indictment. Plaintiff in error demanded trial on the other indictment on April 3 and 27, May 29, June 16 and July 28, 1914, of the March, April, May, June and July terms of the court, respectively, and on September 2, 1914, during the August term of that court, moved that he be discharged for want of prosecution under this indictment. The court denied his motion and a jury was empaneled and plaintiff in error was put upon trial, which resulted in his conviction.

Section 18 of division 13 of the Criminal Code, under which plaintiff in error claimed the right to be discharged for want of prosecution, is as follows: "Any person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried at some term of the court having jurisdiction of the offense commencing within four months of the date of commitment, or if there is no term commencing within that time, then at or before the first term commencing after said four months, shall be ·set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at the next term, in which case the court may continue the case to the next term. If any such person shall have been admitted to bail for an alleged offense other than a capital offense, he shall be entitled, on demand, to be tried at some term commencing within four months after he has been admitted to bail, if there is a term of court within that time at which he may be tried; if not, then at the first term after the expiration of said four months: *Provided,* that if the court shall be satisfied that due exertions have been made to procure the evidence on

behalf of the People, and that there is reasonable ground to believe such evidence may be procured at the next term or at some term to commence within seventy (70) days thereafter, the court may continue the cause to such term."

No claim is made that the delay in this case was caused by the plaintiff in error, or that any showing of reasonable ground for a continuance to the next term or some succeeding term was made by the State's attorney, as provided by the statute, so that the question is squarely presented as to the date from which the time is to be computed when the accused has been indicted, arrested and admitted to bail and a demand made for a trial pursuant to the statute. It is contended by counsel for plaintiff in error that he was entitled to be discharged if not granted a trial, on demand, at some term of court commencing within four months of the time he was admitted to bail, no matter when the demand for trial was made, and that the court accordingly erred in denying his motion to be discharged. It is insisted on behalf of the People that the provisions of the statute have not been violated, inasmuch as plaintiff in error was placed upon trial at a term of court commencing within four months after the date when he first demanded trial on either of the indictments, the argument being, that as the terms of the criminal court of Cook county commenced on the first Monday of each month and plaintiff in error first demanded trial on April 3, 1914, at the March term of that court, the time being computed by months instead of by terms of court, as it was under the prior statute, (Rev. Stat. 1874, chap. 38, par. 438,) the statute was complied with when the plaintiff in error was placed upon trial at any term of court commencing on or before August 3, 1914, that being a term of court commencing within four months from the time he first demanded trial on either of the indictments.

The August term, 1914, of the court commenced on the first Monday in the month, or on August 3, 1914.

Plaintiff in error was placed upon trial on September 2, 1914, or during the August term of that court and at a term commencing within four months after the date of his demand for trial, so that if the theory of the prosecution is correct and the time is to be computed from the date of demand for trial and not from the date of the admission to bail, the statute has been complied with in this case. The difficulty with the question is as to the proper meaning and intent of the words "on demand." Construing section 18 of the statute in connection with the other sections bearing on the practice under our Criminal Code and the various steps in a criminal prosecution, and taking into consideration that the section in question is an amendment of a prior law on the subject, it must be conceded that a demand by the accused is necessary to set in motion the statute under which he would be entitled to a discharge. If the accused makes no demand for trial and the State's attorney does not set the case for trial the case will be carried along on the criminal docket from term to term. If, however, the accused desires a trial, he has the right, under the law, to make a demand, and it is then the duty of the court to grant him a trial either at the term the demand is made or at some term commencing within four months or at the next term, unless the court is satisfied at such subsequent term that there are grounds for continuing the case to the next term, as provided by the statute in question. This section of the statute was amended to its present form in 1895. The former statute read as follows: "Any person committed for a criminal or supposed criminal matter, and not admitted to bail and not tried at or before the second term of the court having jurisdiction of the offense, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner. If such court, at the second term, shall be satisfied that due exertions have been made to procure the evidence for and on behalf of the People, and

that there are reasonable grounds to believe that such evidence may be procured at the third term, it shall have power to continue such case till the third term. If any such prisoner shall have been admitted to bail for a crime other than a capital offense, the court may continue the trial of said cause to a third term, if it shall appear by oath or affirmation that the witnesses for the People of the State are absent, such witnesses being mentioned by name, and the court shown wherein their testimony is material." (Rev. Stat. 1874, p. 411.)

By the amendment of June 21, 1895, the provision for a trial "at or before the second term of the court" after the commitment, was changed to "at some term of court commencing within four months of the date of the commitment," etc., and the provision making a demand for trial necessary in all cases in which the accused had been admitted to bail was added. Under the amended act a demand for trial is necessary to set the statute in operation. Had it been the intention of the legislature that when once the statute was put in operation the time should be computed from the date of the admission to bail and not from the demand for trial, the provision for a demand for trial would seem to be wholly unnecessary, as it neither adds to nor subtracts from the requirements of the former statute as construed by this court. Even under the prior statute it was held the accused was not entitled to his discharge at the third term unless he appeared at each term in accordance with the provisions of his recognizance and was ready for trial, (*Gallagher* v. *People,* 88 Ill. 335,) so that the adding of the provision for a demand for trial as a condition precedent to putting the statute in operation added nothing to the statute unless it was intended that the time should be computed from that date. Nor does it seem reasonable, if a demand for trial is necessary to put the statute in operation, that when such demand is made it shall relate back to a time long before

the time when any such demand for trial was made. That such was not the intent of the legislature we think is clear when the provisions of the statute are read in the light of the previous condition of the law on this subject and the objects and purposes sought to be attained by the revision and enactment of the present statute.

The rule is elementary that the primary object of construing a statute is to ascertain and give effect to the true intent and meaning of the legislature in enacting it; that it is "the intention of the law-makers that makes the law." (*Hoyne* v. *Danisch,* 264 Ill. 467.) For the purpose of ascertaining and giving effect to this intention of the law-makers it is proper to consider the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in such former law which were intended to be cured or remedied by the later enactment. Where the spirit and intention of the legislature in adopting the act are clearly expressed and its object and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious legislative intention and result in absurd consequences not contemplated or intended by it. In such cases the literal language of the statute may be departed from, and words may be changed, altered, modified and supplied, or omitted entirely, if necessary to obviate any repugnancy or inconsistency between the language used and the intention of the legislature as gathered from a consideration of the whole act and the previous condition of legislation upon that subject. (*Krome* v. *Halbert,* 263 Ill. 172; *Hoyne* v. *Danisch, supra.*) To give to the language of this act the literal construction contended for by plaintiff in error would not give effect to the intention of the legislature as manifest from a consideration of the whole act, and would lead to absurd consequences and public hardships never contemplated at the time of its enactment. What the legislature intended was

to secure to the accused a speedy trial as guaranteed by section 9 of article 2 of the constitution of 1870 and also to allow the People time in which to make preparation for such trial. A term of court commencing within four months either of the date of the commitment where the accused was unable to give bail, or the date of the demand for trial where the accused had been admitted to bail, was deemed sufficient for this purpose, the shorter time provided by the former statute having been tried and found unsatisfactory. But to give the statute the construction contended for by plaintiff in error would be to but increase and multiply the evils the revision and amendment of the statute were intended to rectify, for if, when more than four months have elapsed since the accused was admitted to bail without being brought to trial, the time for bringing him to trial must be computed from the date of his admission to bail and not from his demand for trial, then he must be tried at the term of court at which the demand for trial is made or be discharged from further prosecution on that charge. In the case of a person admitted to bail the statute in question provides that "he shall be entitled, on demand, to be tried at some term commencing within four months after he has been admitted to bail, if there is a term of court within that time," etc. It is true that in the language of the statute the accused is entitled to a trial within four months of the time he is admitted to bail, but if, with his consent or without demanding a trial, four months or the second term after which he is admitted to bail goes by, even if he should then make a demand for trial it would be impossible to grant him a trial as provided in the statute and the court would be obliged to discharge him. Such a construction of the statute would be entirely unreasonable, and it could only properly apply in cases where the accused makes a demand for trial at the same time he is admitted to bail.

We think that a demand for trial is necessary to set the statute in question in operation and until a demand for trial is made it is inoperative, and that consequently the term of court at which a defendant is entitled to be tried is a term commencing not more than four months after making the demand, and that the trial court did not err in so holding.

It is next insisted that there is a fatal variance between the allegation as to the ownership of the property in the indictment and the proof. The indictment alleges that the property is that of plaintiff in error and David I. Felsenthal, while the proof shows it was insured as the property of the D. I. Felsenthal Company, a corporation, and the loss was payable to the corporation. We do not regard the allegation as to the ownership of the property as material. The gist of the offense is the burning of property, whether owned by the accused or any other person, with the intent to injure the insurer. In *Mai* v. *People,* 224 Ill. 414, in speaking of the offense created by this statute, we said: "The offense  *  *  *  consists in the willful and malicious burning of goods, wares, merchandise or other chattels which are at the time insured against loss by fire, with the specific intent to injure the insurer, and under the statute creating this offense the intent is the controlling element of the offense and must be alleged and proven." The ownership of the property is immaterial, and the allegation as to ownership could have been omitted, so long as the indictment alleged that the property burned was not that of the insurer, and the indictment still have been good under the statute. The allegation as to the ownership was surplusage and need not be proved as alleged. (Wharton on Crim. Pl. & Pr.—8th ed.—sec. 158; *State* v. *Sampson,* 157 Iowa, 257; *United States* v. *Howard,* 3 Sum. 12; *Nagel* v. *People,* 229 Ill. 598; *Clark* v. *People,* 224 id. 554.) A "variance, in criminal law, is not now regarded as material unless it is of such a substantive

character as to mislead the accused in preparing his defense or places him in a second jeopardy for the same offense." (1 Wharton on Crim. Evidence,—10th ed.— sec. 90.)

It is next insisted that the court erred in sustaining the demurrer to the plea of former acquittal and in refusing to allow plaintiff in error to introduce evidence for the purpose of sustaining such plea. It appears from the allegations of such plea and the evidence offered but not received in support thereof, that the plaintiff in error and David I. Felsenthal were indicted, tried and acquitted of the crime of arson in burning the building situated at 902-904 South Morgan street, in the city of Chicago. The said building was destroyed by the same fire in which the goods, wares and merchandise in question were destroyed which plaintiff in error and the others are charged with burning with intent to injure the insurance companies. It is insisted that inasmuch as the building contained the goods and both crimes were committed at one and the same time, there was, in fact, but one crime, and that the acquittal on the charge of arson was a bar to a prosecution of this offense. This is true only where the offense for which one is tried and acquitted or convicted is but one of the degrees of the same offense for which he is later attempted to be put upon trial. The case of *State v. Cooper*, 13 N. J. L. 361, cited by plaintiff in error, well illustrates this principle. In that case the accused was tried and convicted of the crime of arson. He was subsequently put upon trial for the crime of murder in burning a person to death in such fire, and it was there held that inasmuch as the statute made the crime of arson where a person was killed in the fire, murder, the latter being only a higher degree of the same offense, a judgment of conviction of the charge of arson was a bar to prosecution for a murder committed by such act. But this was true only because the New Jersey statute, which is similar

to ours in that respect, made the crime of arson murder where a person was killed in such fire. If our statute had made the crime of burning goods, wares and merchandise with intent to injure the insurer a part of the crime of arson, the cases cited by plaintiff in error would be in point. Under our statute the crime of arson and the crime of burning goods, etc., with intent to injure the insurer, are separate and distinct offenses. (*Mai* v. *People, supra; Elgin* v. *People,* 226 Ill. 486.) The evidence required to sustain the charge under one indictment would be entirely different from that required to sustain the charge under the other, although both the building and the goods might have been destroyed in the same fire. One who sets fire to a building not his own, with intent to destroy it, would be guilty of arson whether the building was insured or not, but the same would not be true with respect to the crime created by the statute in question. In order to constitute this crime proof must also be made that the property was insured and that the burning was with intent to injure the insurer. As said in *Mai* v. *People, supra:* "The differences between this offense and arson are: (1) It may be committed on personal property; (2) it may be committed upon one's own property; (3) it must be committed on property which at the time is insured against loss by fire, but not necessarily under a valid policy; (4) it must be committed with the specific intent to injure the insurer; (5) the punishment is imprisonment in the penitentiary not less than one nor more than ten years, whereas arson is punished, under our statute, by imprisonment in the penitentiary not less than one nor more than twenty years." The rule that a person cannot be twice tried or put in jeopardy for the same offense has no application where two separate and distinct crimes are committed by one and the same act. (12 Cyc. 282; Wharton on Crim. Evidence,—10th ed.—sec. 578; 3 Greenleaf on Evidence,—15th ed.—sec. 36; *Spears* v. *People,* 220 Ill.

72.) Such was the situation presented by the fire in question, and the acquittal on the former charge of arson constitutes no bar to a prosecution for the crime charged in this indictment.

It is further insisted that the verdict of the jury is contrary to 'the evidence; that incompetent and immaterial evidence of a highly prejudicial character was admitted over the objections of plaintiff in error; that improper remarks were made by the trial court, and that improper and prejudicial instructions were given on behalf of the People. These several contentions are so closely related and depend so much on the character of the evidence introduced that they will be considered together.

The evidence shows that at the time of the fire plaintiff in error, Nate Silver, David I. and Harry Felsenthal and their father were the owners of all of the capital stock in a corporation known as the D. I. Felsenthal Company, having a capital stock of $15,000, divided into one hundred and fifty shares of the value of $100 each. Fifty shares of the stock were owned by the plaintiff in error, twenty-five shares by his brother-in-law, Nate Silver, and the rest of the stock by the three Felsenthals. The corporation was engaged in the business of dealing in cotton and woolen rags and clippings. Plaintiff in error does not appear to have had any great experience in this business. He resided at Racine, Wisconsin, where he was the owner of a company known as the Racine Iron and Metal Company. The Felsenthals had started the business of the D. I. Felsenthal Company and organized the corporation and originally owned all of the stock. They lacked the necessary capital to conduct the business, and through successive loans by plaintiff in error they became indebted to him, and he eventually took stock in the company by way of liquidating his indebtedness and to assist the Felsenthals in conducting the business. After plaintiff in error became interested in the company he from time to time ex-

tended credit to the company, so that at the time of the fire it was indebted to him something over $32,000. The company carried insurance on the stock in the building to the amount of about $31,500. The evidence on the part of plaintiff in error tends to show that at the time of the fire the stock of goods insured was worth approximately $37,177.49, that there were accounts due the company amounting to about $13,000, and that it had a balance to its credit of $3000 in the bank. The evidence on the part of the People tends to show that all of the superior grades of clippings had been disposed of; that the stock on hand consisted of leavings worth anywhere from $4000 to $9000; that it was of a character that would not be depreciated much on account of the fire, and that the value of the salvage was approximately $1200 to $1300. The evidence further shows that shortly before the fire David I. and Harry Felsenthal severed their connection with the Felsenthal Company, and each of them went to work for a competing firm engaged in the same line of business, known as B. Cohen & Sons, on a salary and for a percentage of profits; that as a part of the arrangement by which they quit the Felsenthal Company it was agreed that company would cease to deal in woolen clippings, and that such woolen clippings as it did purchase were to be turned over to Cohen & Sons to be disposed of by them, the Felsenthal Company being allowed a profit of ten per cent on such sales, and that Cohen & Sons were not to deal in cotton clippings, and such cotton clippings as were purchased by Cohen & Sons were to be turned over to the Felsenthal Company and disposed of by the latter company, allowing to Cohen & Sons a profit of ten per cent on such sales. At the time the two Felsenthals withdrew from the Felsenthal Company they executed and delivered to the plaintiff in error their promissory notes for $15,000 each, secured by their interest in the profits of the Cohen & Sons business, the net profits of which would amount approxi-

mately to twelve and one-half per cent each. At this time
Cohen & Sons had the largest establishment of the kind
in the west dealing in those materials and were doing a
prosperous business. The fire occurred about 2:54 A. M.,
March 7, 1912. The building and its contents were badly
burned and damaged by fire. The fire started with a dull
explosion and seemed to break out on all three floors at
substantially the same time. The testimony of the firemen
and others who attended the fire was that it was of in-
cendiary origin; that there was an odor of gasoline, and
that they found empty gasoline cans in the building. The
evidence was amply sufficient to establish the incendiary
origin of the fire if the jury believed such testimony. At
the time the fire started plaintiff in error was at his home
in Racine, Wisconsin. He was first notified of the fire
about half-past four in the morning by a telephone mes-
sage from Nathan Spira, a public insurance adjuster, who
has since been convicted for his complicity in a similar
offense with Ben Fink and others. (*People* v. *Spira,* 264
Ill. 243.) Fink confessed that he started the fire in ques-
tion, and claims that he was employed so to do by plaintiff
in error and David I. Felsenthal. This was denied by both
plaintiff in error and Felsenthal. Plaintiff in error came to
Chicago on an early morning train. He was met at the
station by Spira and went with him to the place of the fire,
and subsequently placed the matter of the adjustment of
the loss in Spira's hands. At the time of the trial plaintiff
in error had adjusted his loss with certain of the insurance
companies, realizing $5250 on $7250 worth of insurance,
and there was still outstanding and unadjusted $24,250 in-
surance on the property.

The evidence connecting the plaintiff in error with the
offense consists of the confession of Ben Fink, a profes-
sional fire-bug; of the testimony of Rosenberg, Fink's as-
sociate, of Joseph Clark, a public insurance adjuster who
had previously been convicted of complicity in a similar

offense, (*People* v. *Covitz,* 262 Ill. 514,) and of B. M. Levine, who was charged with a similar offense; of circumstances showing plaintiff in error's association, after his indictment, with Fink, Rosenberg, Spira, Levine and others of that character, and his contributing money to procure bail for some of them and to aid them in their defense; of his efforts made by and through them to secure copies of Fink's confession, and of affidavits made by them and others with relation to the matters of this fire. Plaintiff in error denied substantially all the testimony of these parties, and explained his efforts to secure the affidavits by showing that he desired to have them for use in the trial of suits which he had brought against the insurance companies.

The question of plaintiff in error's guilt or innocence was one purely for the jury on the conflicting evidence before them. While no great credence can be placed in the testimony of accomplices, especially when it appears that they are in the employ of the State or of insurance companies who are financially interested in securing a conviction of the accused property owner, and where the witnesses have been promised immunity and employment for giving their testimony in such cases, still convictions upon evidence largely of such character have been sustained by this court in *People* v. *Covitz, supra,* and *People* v. *Harris,* 263 Ill. 406; and where the jury were properly instructed as to the law, and there are corroborating circumstances, we would not feel at liberty to disturb the verdict of a jury based on such evidence. The law in this State is that the testimony of an accomplice is legal and competent evidence against one accused of crime, and that a conviction may be had on such testimony, alone, if it is of such a character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant. (*Gray* v. *People,* 26 Ill. 344; *Collins* v. *People,* 98 id. 584; *Rider* v. *People,* 110 id. 11; *Kelly* v. *People,* 192 id. 119.) It

is a character of evidence, however, that is subject to grave suspicion and should be acted upon with great caution, and only when the jury are satisfied from it, and from all the circumstances in evidence in the case, that it is true. (*Hoyt* v. *People,* 140 Ill. 588; *Campbell* v. *People,* 159 id. 9; *People* v. *Feinberg,* 237 id. 348.) It may be prompted by worthy or unworthy motives. In determining the credibility of such witnesses all of the facts and circumstances proven on the trial must be taken into consideration, and where the People's case rests upon testimony of this character,—of self-confessed criminals hiring themselves out to commit arson where they have no interest in the matter except to obtain payment from persons interested in having such a crime committed, and in obtaining immunity for themselves and escaping punishment for such offense and securing employment by testifying against others implicated with them when the crime is discovered,—it is highly important that the jury should be properly and accurately instructed as to the law of the case and the rules that are to guide them in weighing the evidence and passing upon the guilt or innocence of the accused. In this case, at the instance of the People, the court gave to the jury the following instruction:

"The jury are instructed that a doubt upon which you may acquit the defendants, or either of them, must be a reasonable doubt,—not merely one of speculation or probability. The State is not required to prove defendants guilty beyond all doubt. It is sufficient if the proof in this case convinces you beyond all reasonable doubt, and if the proof in this case convinces you beyond all reasonable doubt that the defendants are guilty, then you should find them guilty."

Great care should be exercised by the court in attempting, by an instruction, to define reasonable doubt. As stated by Mr. Chief Justice Shaw in the opinion in the celebrated *Webster case,* 5 Cush. 295, in defining reason-

able doubt: "It is a term often used, probably pretty well understood but not easily defined." In *People* v. *Barkas,* 255 Ill. 516, on page 527 of the opinion it is said: "The term 'reasonable doubt' has no other or different meaning in law than it has when used in any of the ordinary transactions or affairs of life. It is doubtful whether any better definition of the term can be found than the words themselves." As stated in the foot-note in *Abbott* v. *Territory of Oklahoma,* 20 Okla. 119, as reported in 16 L. R. A. (N. S.) 260: "In many cases the advisability of giving the jury any definition of reasonable doubt is seriously questioned. It has been said that the phrase is its own best definition, and any attempt to define the phrase is likely to leave in the minds of the jury a reasonable doubt as to what a reasonable doubt is."

The defendant in a criminal case is entitled to be tried by a jury of twelve drawn from the voters of the county, and under our system of drawing juries the jurors are generally of widely different ages, occupations, experience and ability. They must all agree on a verdict. What would amount to a reasonable doubt or be defined as a reasonable doubt by one juror would not necessarily be so considered by another, and yet the defendant is entitled, under the law, to have just such a jury pass on his case, is entitled to the verdict of each member of the jury, and has the right to have each one resolve in his own mind whether or not, from all the evidence, he has what he deems to be a reasonable doubt of the defendant's guilt. While the courts have approved charges to the jury defining what is a reasonable doubt and have disapproved of others, it is very certain that in those jurisdictions in which the rule of reasonable doubt in criminal cases obtains, no court of last resort has approved an instruction which informed the jury that a doubt upon which the jury could acquit must not be one of probability. The instruction under consideration is loosely and inaccurately drawn,

but the meaning to be gathered from it is, that the jury should not acquit even if they thought there was a probability that the defendant was not guilty.

In *People* v. *Rosenberg*, 267 Ill. 202, an instruction in the exact language of the above instruction was given, with the exception that after the words "then you should find them guilty," the words "even though you may believe that there is a possibility that he is innocent" were added, and we there said of such an instruction: "This instruction set up as a standard of a reasonable doubt that it must not create a mere probability that the accused is not guilty. That which is probable is that which has more evidence for than against it; which inclines the mind to believe a fact although it leaves some room for doubt. Probability is that quality or state which presents an appearance of truth, and the instruction told the jury that when the testimony was weighed by them it would not suffice for an acquittal that it appeared probable the accused was not guilty. The instruction given to the jury was taken by them as a guide for their deliberation and was not the law. (*Smith* v. *State*, 92 Ala. 30; *Browning* v. *State*, 30 Miss. 656.) It cannot be said that the jury could not have reached any other conclusion. The defendant, Rosenberg, denied having any connection with the crime, and it was essential to a fair trial that his testimony should go to the jury and be considered by them under the correct rule concerning his right to an acquittal if there was a reasonable doubt of his guilt."

The omission of the last clause in the instruction in the case at bar in no way relieved the instruction from the criticism made of it in *People* v. *Rosenberg, supra,* or cured the vice in the first part of the instruction as pointed out in that case. It is essential to the operation and preservation of the system of jury trials that the jury should be correctly instructed as to the rules of law governing them in weighing the evidence and determining the

guilt or innocence of the accused, and no error of the court in performing its duty in that respect can be over-looked or disregarded unless it is of such a character that it clearly appears the error could not have affected the verdict of the jury. Any other rule would be destructive of the system of trial by jury. The instruction in this case, which told the jury that a mere probability that the accused were not guilty was not sufficient to create a reasonable doubt as to their guilt, was erroneous and should not have been given.

By another instruction the jury were told that they were the judges of the credibility of witnesses, and that they had a right "to determine, from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor or fairness or the lack thereof, the reasonableness or unreasonableness of the story told by them, their apparent intelligence or lack of intelligence, their interest in the outcome of the case, if any, as shown by the evidence, or the lack of such interest, and from all the surrounding circumstances appearing on the trial, which witnesses are more worthy of credit and to give credit accordingly." The criticism made of this instruction is, that it attempts to enumerate the elements which the jury are to consider in determining to which of the witnesses to give credit, and allows the jury to take into consideration "the surrounding circumstances appearing on the trial," which would include the conduct and demeanor of the defendants and other witnesses while in the court room during the trial, as well as other facts and circumstances not in evidence. Instructions of this character, advising the jury as to the things which may properly be considered by them in determining the credibility of witnesses, have been given and approved by this court in numerous cases, and so far as the objection made to it in this respect is concerned we think it is not well taken, but as to the latter clause, allowing the jury to take into consideration "all

the surrounding circumstances appearing on the trial," we think the instruction in this form was too broad. (*People v. Terrell,* 262 Ill. 138; *Purdy v. People,* 140 id. 46; *Vale v. People,* 161 id. 309; *People v. McGinnis,* 234 id. 68.) It should have been limited to the other facts and circumstances appearing in evidence. (*People v. Terrell, supra.*)

It is also insisted that the court erred in giving an instruction on the question of circumstantial evidence in which the jury were told that they had a right to convict the defendants upon circumstantial evidence, *alone,* if they believed, beyond a reasonable doubt, that circumstances had been proven to be true which were well connected, supported one another in a clear and lucid manner, and could not reasonably be accounted for except upon a theory that the defendants were guilty of the crime charged against them, etc. The criticism made of the instruction is, that it singles out circumstantial evidence and tells the jury that they have a right to convict upon such evidence, alone, notwithstanding there was the direct testimony of Rosenberg tending to connect plaintiff in error with the crime charged. While it was the duty of the jury to consider all of the evidence in the case, direct as well as circumstantial, and base their verdict upon a consideration of all of such evidence, the People had a right to have the jury informed of their right to convict upon circumstantial evidence if they believed, beyond a reasonable doubt, that circumstances had been proven to be true that could not reasonably be accounted for except on the theory that the defendants were guilty of the crime charged, and we do not think the instruction was improper in this case.

Complaint is also made of the action of the court in calling Rosenberg as a witness and allowing him to be cross-examined by the State's attorney. The State occupied a peculiar position with respect to this witness. There was evidence tending to show that he had been furnished bail by plaintiff in error, at times had been in his employ

269 — 21

since the commission of the alleged crime, and that plaintiff in error had furnished him money and credit to go into business. Twice before he had testified in suits in such a way as to practically leave plaintiff in error out of the bargain made between Felsenthal and witness to pay Fink for starting the fire, and on a former trial he had mistaken Harry Felsenthal for D. I. Felsenthal, thus materially weakening his testimony. Under these circumstances the State's attorney was in no position to vouch for his credibility, as he might prove a very hostile witness. He was so connected with the affair that it was essential that his testimony be had on the trial. We think, under the circumstances, that the court did not err in the exercise of its discretion in calling him as a witness. The practice of the court calling such witnesses has been approved by this court in numerous cases. *People* v. *Cleminson,* 250 Ill. 135; *Carle* v. *People,* 200 id. 494; *People* v. *Baskin,* 254 id. 509; *People* v. *Rardin,* 255 id. 9.

It is also insisted the court erred in its rulings in the admission of certain evidence. This evidence was that as to the association of plaintiff in error with Rosenberg, Lavine, Spira and others after the fire; contributing money to procure an assistant State's attorney to furnish him and others with copies of the confession of Fink; the procuring of bail for Rosenberg and paying attorneys for procuring conflicting affidavits from Jake Machilinsky, the expressman who is alleged to have delivered the gasoline to the building occupied by the D. I. Felsenthal Company, and the paying of an attorney for going to the State's attorney's office with Rosenberg and Machilinsky at a time when they were called over there by the State's attorney about this and other matters. The object of the introduction of this evidence was to show guilty knowledge on the part of plaintiff in error of the crime with which he was charged. Evidence that the accused has attempted to procure false evidence or to destroy evidence against himself

is always admissible for the purpose of showing consciousness of guilt, and so attempts by persons other than the accused to bribe or to suppress testimony are admissible if the accused had knowledge of or was in any way connected with such attempts; and where the facts are shown, it is for the jury to determine, under all the facts and circumstances proven, whether or not the accused had knowledge of or was connected with the crime with which he is charged. "It has been held that a false theory of defense is some evidence of guilt. * * * The court may therefore charge that the false theory of defense indicating a consciousness of guilt may justify the jury in convicting the prisoner." (Underhill on Crim. Evidence,— 2d ed.—sec. 121.) We think the evidence offered for the purpose of showing guilty knowledge was properly admitted, but the evidence as to plaintiff in error's "kiting" notes, and similar matters wholly disconnected from this case, should have been excluded.

Complaint is also made that the witness Rosenberg was allowed to testify, over objection, that he had made an affidavit about the fire. While it would be improper to allow a witness who is testifying to a fact or facts to state that he had previously made an affidavit as to such facts, it is apparent from the record that the purpose of such testimony was to explain conflicting affidavits that this witness had made. The object of the examination along this line was to clear up these matters, and not for the purpose of bolstering up his testimony by showing he had previously sworn to the same thing.

For the errors indicated the judgment will be reversed and the cause remanded to the criminal court of Cook county for a new trial.     *Reversed and remanded.*